37 P.3d 565

**Jamal SPOCK, Petitioner–Appellant,**

v.

**ADMINISTRATIVE DIRECTOR OF THE COURT, State of Hawai'i, Respondent–Appellee.**

No. 23065.

Intermediate Court of Appeals of Hawai'i.

Jan. 30, 2001.

Certiorari Granted March 5, 2001.

Keith E. Tanaka, on the briefs, for Petitioner–Appellant.

Allan G. Kawada and Girard D. Lau, Deputy Attorneys General, on the briefs, for Respondent–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Petitioner–Appellant Jamal Spock (Spock) appeals the district court's November 22, 1999 Judgment on Appeal affirming the administrative hearing officer's (Hearing Officer's) October 4, 1999 Notice of Administrative Hearing Decision revoking Spock's driver's license for life from October 9, 1999. We reverse.

## RELEVANT STATUTES

Hawai'i Revised Statutes (HRS) § 286–255(a) (Supp.1999) states, in relevant part, as follows:

Whenever a person is arrested for a violation of section 291–4 [driving under the influence of intoxicating liquor] or 291–4.4 [habitually driving under the influence of intoxicating liquor or drugs], . . ., [t]he arresting officer shall inform the person that the person has the option to take a breath test, a blood test, or both. The arresting officer also shall inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test.

HRS § 286–264(a) (Supp.1999) states, in relevant part, as follows:

If an arrestee subject to administrative revocation under this part submitted to a breath or blood test and has had no prior alcohol enforcement contacts during the five years preceding the date of arrest, the director, at the request of the arrestee at the administrative hearing, may issue a conditional permit allowing the arrestee to drive after a minimum period of absolute license revocation of thirty days if one or more of the following conditions are met:

(1) The arrestee is gainfully employed in a position that requires driving and will be discharged if the arrestee's driving privileges are administratively revoked; or

(2) The arrestee has no access to alternative transportation and therefore must drive to work or to a substance abuse treatment facility or counselor for treatment ordered by the director under section 286–261.

HRS § 286–259 (Supp.1999) states, in relevant part, as follows:

**Administrative Hearing.** (a) If the director administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision. . . .

. . . .

(c) The arrestee may be represented by counsel.

(d) The director shall conduct the hearing and have authority to:

. . . .

(2) Examine witnesses and take testimony;

(3) Receive and determine the relevance of evidence;

(4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken;

. . . .

(6) Make a final ruling.

(e) The director shall affirm the administrative revocation only if the director determines that:

. . . .

(3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having an alcohol concentration of .08 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

(f) The arrestee's prior alcohol enforcement contacts shall be entered into evidence.

(g) The sworn statements provided in section 286–257 shall be admitted into evidence. Upon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law

enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing. If the official cannot appear, the official may at the discretion of the director testify by telephone.

HRS § 286–251 (Supp.1999) defines "[a]lcohol enforcement contact" as follows:

"Alcohol enforcement contact" means any administrative revocation ordered pursuant to this part; any driver's license suspension or revocation imposed by this or any other state or federal jurisdiction for refusing to submit to a test for alcohol concentration in the person's blood; or any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

HRS § 286–260 (Supp.1999) states, in relevant part, as follows:

**Judicial review; procedure.** (a) If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. . . .

(b) The court shall schedule the judicial review as quickly as practicable, and the review shall be on the record of the administrative hearing without taking of additional testimony or evidence. . . .

(c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

(d) The court shall not remand the matter back to the director for further proceedings consistent with its order.

## RELEVANT PRECEDENT

In *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268 (1999), the Hawai'i Supreme Court affirmed the district court's order granting the defendant's motion to suppress the blood test results in his criminal DUI (driving under the influence of intoxicating liquor) prosecution. The defendant had consented to a blood test after he was misinformed by the arresting officer

[t]hat if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceeding [sic] the date of arrest, your driving privileges will be revoked for one year *instead of the three month revocation that would apply if you chose to take the test and failed it* [.]

*Id.* at 47, 987 P.2d at 270 (emphasis in original). The misinformation was that "your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take the test and failed it[.]" In truth, the relevant time period for choosing to take the test and failing it was revocation anywhere from three months to one year. The Hawai'i Supreme Court decided that because the arresting officer relevantly and materially misinformed the defendant of the administrative penalties applicable upon choosing to take the blood test and failing it, the defendant did not knowingly and intelligently consent to a blood test. According to the Hawai'i Supreme Court,

[t]he statutory scheme, however, also protects the rights of the driver in that he or she may withdraw his or her consent before a test is administered. To this end, Hawaii's implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test.

. . . .

. . . Not only was the information given to Wilson misleading, it was relevant to his decision whether to agree to or refuse the blood alcohol test. Thus, although Wilson elected to take the test, he did not make a knowing and intelligent decision whether to exercise his statutory right of consent or refusal.

*Id.* at 49–51, 987 P.2d at 272–74 (footnotes and citations omitted; emphasis in original).

## BACKGROUND

After being arrested for DUI on November 4, 1990, Spock's driver's license was suspended for ninety days on January 30, 1991.

After being arrested for DUI on February 20, 1994, Spock's driver's license was revoked by the ADLRO (Administrative Driver's License Revocation Office) on April 5, 1994.

After being arrested for DUI on September 3, 1998, Spock's driver's license was suspended for ninety days on January 20, 1999.

On September 8, 1999, Spock was arrested for DUI.

The AD–DUI Form 2 (3/92) (DUI Form 2), dated September 8, 1999, states, in relevant part, as follows:

a. That you may take either a blood test or a breath test or both;

b. That if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest, your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take a test and failed it, (2) if your driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest, your driving privileges will be revoked for two years instead of the one year revocation that would apply if you chose to take a test and failed it, (3) if your driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest, your driving privileges will be revoked for four years instead of the two year revocation that would apply if you chose to take a test and failed it, (4) if your driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest, your driving privileges will be revoked for life regardless of whether you take a test or not, (5) if you are under the age of eighteen years, your revocation will be for the period remaining until your eighteenth birthday or for the appropriate revocation period listed above, whichever is longer;

c. That criminal charges under Sec. 291–4 HRS, may be filed;

d. That if your driving privilege is revoked, notice of the results of the hearing will be sent to the examiner of drivers of each county, and that the examiner shall deny you a license or permit to operate a motor vehicle for the period of the above revocation;

e. That you shall be referred to a substance abuse counselor for an assessment of your dependence and the need for treatment at your own expense; and

f. That you shall be required to obtain treatment at your own expense if deemed appropriate.

g. You are not entitled to an attorney before you submit to a breath or blood test.

h. That you shall not qualify to request a conditional permit if you refuse to take a breath or blood test.

The arresting officer's report states, in relevant part, as follows:

At the Wailuku Police Station, I gave SPOCK a copy of AD–DUI Form 2. I requested he read the form silently as I read the form out loud to him. After I read AD–DUI Form 2 out loud to SPOCK, I verbally explained the form, including what a conditional permit was and that he would not be eligible to request for a conditional permit if he elected to refuse to take any type of chemical test(s). **I informed SPOCK that the director of the A.D.L.R. may grant a conditional permit allowing SPOCK to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s).**

SPOCK informed me that he understood the AD–DUI Form 2, how I had explained the AD–DUI Form 2, what a conditional permit was and the provisions to obtain a conditional permit.

(Emphasis added.)

The Intoxilyzer test given to Spock showed that his breath alcohol content was 0.183.

On September 17, 1999, Spock requested an administrative hearing.

On September 27, 1999, at the hearing before the Hearing Officer, Spock was the only witness who testified and he testified, in relevant part, as follows:

Q. Okay. After you got arrested and taken to the station was there any discussion as far as taking the breath test or blood test?

A. Yeah. At the scene, he wanted me to take a test, but I refused it. And then, at the station he said that if I took a breath test that I would have a conditional permit.

Q. Okay. How did the officer explain that to you?

A. He just said it would be easier to take the test, so that I could have a conditional permit.

Q. Did the officer know that you had prior DUIs?

A. Yes, it was on the conversation on the way to the police station.

. . . .

Q. Okay. And when you agreed to take the breath test, what was that based upon?

A. The conditional permit. Otherwise, I would have refused it, as well.

Q. What was told to you by the officer?

A. If you take the breath test it would be—easier if you refuse the breath test, I would have my license lost, but if you took the breath test, I would be able to have a conditionally to and from work.

Q. Did the officers tell you anything about that because of your prior alcohol enforcement contacts or your prior arrest for DUI, that you would not be able to get a conditional permit? Was that ever discussed at all?

A. No.

Q. So based upon what the officer told you about conditional permit, you elected to take a breath test?

A. Yes.

On October 4, 1999, the Hearing Officer filed a Notice of Administrative Hearing Decision sustaining the administrative revocation of Spock's driver's license and revoking Spock's license from October 9, 1999, for life.

On October 4, 1999, the Hearing Officer entered Findings of Fact, Conclusions of Law, and Decision, in relevant part, as follows:

2. . . . [Spock] stated that he had been told by RICKY UEDOI ("Arresting Officer") that if [Spock] did not take an alcohol concentration test, he would not be able to get a conditional permit. [Spock] stated that he would not have taken an alcohol concentration test if he had known that his prior record disallowed consideration for a conditional permit.

. . . This Hearing Officer finds that the information given by the Arresting Officer was accurate. Taking an alcohol concentration test is *one* of the preconditions for consideration of a conditional permit; it is not, however, the only precondition. . . . This Hearing Officer also was not persuaded by [Spock's] statement that the Arresting Officer was aware of [Spock's] precluding prior alcohol enforcement contacts. Further, this Hearing Officer finds that even if the Arresting Officer had had accurate knowledge of [Spock's] prior alcohol enforcement record, it would not have been proper for the Arresting Officer to influence [Spock's] choice, e.g., suggest that [Spock] not take a test.

This Hearing Officer further finds that [Spock] was aware of his past own history and that the information that [Spock] would not qualify for a conditional permit had been made available to, and was communicated to, [Spock]. Moreover, [Spock] did not testify that he had been confused or had asked questions with respect to the application of the ADLRL to his circumstances. . . .

. . . .

. . . This Hearing Officer finds the written documentation contained in the case file to be more reliable and trustworthy than [Spock's] recollection of the events that surrounded his arrest and detention. This Hearing Officer therefore gave little weight to [Spock's] testimony concerning his recollection of events. . . .

. . . .

18. [Spock's] prior driving record in the State of Hawaii shows three alcohol enforcement contacts, as defined in HRS § 286–251, as reported by the State of Hawaii traffic violations information systems, TRAVIS.

(Footnote and citations omitted; emphasis in original.)

On October 8, 1999, Spock filed a Petition for Judicial Review and Statement of the Case. In this document, Spock's counsel stated that "[Spock] elected to take a breath test based upon the officer's representations that if [Spock] did so, [Spock] would be eligible for a conditional permit. This was clearly not possible under HRS § 286–254."

On November 8, 1999, the district court held its judicial review hearing.

On November 22, 1999, the district court entered its Decision and Order Affirming Administrative Revocation stating, in relevant part, as follows: "Since [Spock's] argument involves a question of credibility, this will not be disturbed absent clear abuse which this court finds does not exist."

### QUESTION

Spock states the question as follows: "Under the holding of *State v. Wilson*, [92 Hawai'i 45, 987 P.2d 268 (1999),] was the court's affirmation of the administrative revocation clearly erroneous?"

Respondent–Appellee Administrative Director of the Court, State of Hawai'i (State) states the question as follows:

Where the written form does not erroneously advise a driver regarding eligibility for a conditional permit, and the arresting officer orally states correctly that the driver "*may*" receive a conditional permit (if driver takes a breath or blood test), must driver's license revocation be reversed simply because it later comes to light that driver had prior arrests making the driver ineligible for a conditional permit? [1]

(Footnote added; emphasis in original.)

We conclude that the general question is whether the Hearing Officer reversibly erred

when she denied Spock's motion to suppress the breath test results.

### DISCUSSION

#### 1.

The emphasized part of the following finding by the Hearing Officer is clearly erroneous: "This Hearing Officer further finds that [Spock] was aware of his past own history and that **the information that [Spock] would not qualify for a conditional permit had been made available to, and was communicated to, [Spock].**" There is no evidence in the record supporting this finding.

#### 2.

█ The State contends that the police did not misinform Spock. We disagree. The police read DUI Form 2 to Spock. The only statement that DUI Form 2 made about a conditional permit is as follows: "That you shall not qualify to request a conditional permit if you refuse to take a breath or blood test." DUI Form 2 said nothing about Spock's eligibility for a conditional permit if he agreed to take a breath or blood test. The arresting officer was not required to tell Spock anything else about a conditional permit. Nevertheless, the arresting officer "informed SPOCK that the director of the A.D.L.R. [Administrative Driver's License Revocation] may grant a conditional permit allowing SPOCK to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s)." The arresting officer did not inform Spock that if or because Spock had a prior alcohol enforcement contact within the five years preceding the date of arrest the director of A.D.L.R. *cannot* grant a conditional permit allowing SPOCK to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s). Thus, the arresting officer misinformed Spock.

█ The Hearing Officer concluded "that even if the Arresting Officer had had accurate knowledge of [Spock's] prior alcohol en-

---

1. It having "later [come] to light that [the] driver had prior arrests making the driver ineligible for a conditional permit[,]" can it honestly be said

that "the written form does not erroneously advise a driver regarding eligibility for a conditional permit[?]"

forcement record, it would not have been proper for the Arresting Officer to influence [Spock's] choice, e.g., suggest that [Spock] not take a test." The State argues that if the arresting officer is required to inform the arrestee about the "five years" exception to the eligibility for a conditional permit, then the arresting officer is also required to inform the arrestee about the various prerequisites for a conditional permit. We conclude, pursuant to HRS § 286–255(a), that the arresting officer: (1) is not required to inform the arrested person about the "five years" exception when he/she limits his/her information to the arrestee to what is written in part 4.h. of DUI Form 2; and (2) is required to inform the arrested person about the "five years" exception when he/she additionally informs the arrestee, as did the arresting officer in Spock's case, "that the director of the A.D.L.R. may grant a conditional permit allowing [the arrestee] to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s)."

### 3.

The State contends that Spock was not confused into taking a test he would otherwise have not taken, i.e., the police did not mislead Spock.

The question is whether (a) the State had the burden to prove Spock's reliance on and prejudice from the misinformation or (b) Spock's nonreliance or lack of prejudice from the misinformation given to him by the police was an affirmative defense or (c) Spock's reliance on and prejudice from the misinformation was conclusively presumed.

In *Wilson, supra,* the dissenting opinion noted that "[the defendant] has *never* asserted that he would have refused the test had he received a full explanation of the penalties under *Gray [v. Administrative Director of the Court,* 84 Hawai'i 138, 931 P.2d 580 (1997)]." *Wilson,* 92 Hawai'i at 60, 987 P.2d at 283 (emphasis in original). The majority opinion was silent on the question of the defendant's reliance on and prejudice from the relevant and material insufficient information/misinformation and concluded that the misinformation and/or insufficient infor-

mation resulted in the absence of a knowing and intelligent consent.

■ In light of *Wilson,* we conclude that in this context the question of the arrestee's reliance is objective, not subjective. Based on the relevant statutes and *Wilson,* we conclude that the arrestee's reliance on misinformation and/or insufficient information from the arresting officer is conclusively presumed when the following conditions are satisfied:

1. Misinformation was given and/or a statute required the information to be given and the information was not given.

2. The misinformation and/or insufficient information was relevant and material to the arrestee's decision.

3. The arrestee has not admitted that he or she did not rely on the misinformation and/or insufficient information.

4. If given, the correct and/or sufficient information reasonably may have *influenced* a reasonable person to decide opposite of how the arrestee decided.

In this case, all four conditions have been satisfied. Therefore, it must be conclusively presumed that Spock did not knowingly and intelligently consent to the breath test and concluded that the evidence of the results of the breath test administered to Spock should have been suppressed.

### 4.

The State contends that Spock ended up with no worse a penalty than he would have received had he refused to take the chemical test. According to the State, had Spock declined a test

> he would still have lost his license having three (3) prior alcohol enforcement contracts [sic] and refusing a test.

Therefore, even if we assume the police misled Spock, and he was thereby mistakenly led into taking a test he otherwise would not have taken, he ended up with no worse a penalty than he would have received had he refused to take the chemical test.

The State adds that

> ... Spock's taking the breath test was *doubly* harmless, because the hearing offi-

cer found separately and independently by a preponderance of the evidence that irrespective of Spock's breath test result, the remainder of the record "reflects that the arrestee drove, operated or was in actual physical control, of the motor vehicle while under the influence of intoxicating liquor."
... This conclusion alone justifies the revocation of Spock's driver's license without the necessity of relying on the breath test for the revocation.

(Emphasis in original.)

These arguments by the State assume the evidence presented at the administrative hearing and the result of the administrative hearing would have been the same had Spock not taken the test. In our view, this assumption is without basis in fact.

## CONCLUSION

Accordingly, we reverse (1) the district court's November 22, 1999 Judgment on Appeal affirming the administrative hearing officer's October 4, 1999 Notice of Administrative Hearing and (2) the administrative hearing officer's October 4, 1999 Notice of Administrative Hearing Decision.