41 P.3d 715

Joseph P. CASTRO, Petitioner–Appellee,

v.

**ADMINISTRATIVE DIRECTOR OF
the COURT, State of Hawai'i,
Respondent–Appellant.**

No. 23232.

Intermediate Court of Appeals of Hawai'i.

May 7, 2001.

Certiorari Granted May 22, 2001.

Girard D. Lau, Deputy Attorney General, on the briefs, for Respondent–Appellant.

Roland Nip, Honolulu, on the briefs, for Petitioner–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Respondent–Appellant Administrative Director of the Court, State of Hawai'i (the State), appeals the district court's February 1, 2000 Judgment on Appeal that reversed the administrative hearing officer's (Hearing Officer's) November 29, 1999 Notice of Administrative Hearing Decision that revoked the driver's license of Petitioner–Appellee Joseph P. Castro (Castro) for four years from October 17, 1999, through November 24, 2003. We affirm.

### RELEVANT STATUTES

Hawai'i Revised Statutes (HRS) § 286–255(a) (Supp.1999) states, in relevant part, as follows:

Whenever a person is arrested for a violation of section 291–4 [driving under the influence of intoxicating liquor (DUI)] or 291–4.4 [habitually driving under the influence of intoxicating liquor or drugs], . . .

[t]he arresting officer shall inform the person that the person has the option to take a breath test, a blood test, or both. The arresting officer also shall inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test.

HRS § 286–259 (Supp.1999) states, in relevant part, as follows:

**Administrative Hearing.** (a) If the director administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision. . . .

. . . .

(c) The arrestee may be represented by counsel.

(d) The director shall conduct the hearing and have authority to:

. . . .

(2) Examine witnesses and take testimony;

(3) Receive and determine the relevance of evidence;

(4) Issue subpoenas, take depositions, or cause depositions or interrogatories to be taken;

. . . .

(6) Make a final ruling.

(e) The director shall affirm the administrative revocation only if the director determines that:

. . . .

(3) The evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having an alcohol concentration of .08 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

(f) The arrestee's prior alcohol enforcement contacts shall be entered into evidence.

(g) The sworn statements provided in section 286–257 shall be admitted into evidence. Upon notice to the director no later than five days prior to the hearing that the arrestee wishes to examine a law

enforcement official who made a sworn statement, the director shall issue a subpoena for the official to appear at the hearing. If the official cannot appear, the official may at the discretion of the director testify by telephone.

HRS § 286–251 (Supp.1999) defines "alcohol enforcement contact" as follows:

"Alcohol enforcement contact" means any administrative revocation ordered pursuant to this part; any driver's license suspension or revocation imposed by this or any other state or federal jurisdiction for refusing to submit to a test for alcohol concentration in the person's blood; or any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

HRS § 286–260 (1993 and Supp.2000) states, in relevant part, as follows:

**Judicial review; procedure.** (a) If the director sustains the administrative revocation after administrative hearing, the arrestee may file a petition for judicial review within thirty days after the administrative hearing decision is mailed. . . .

(b) The court shall schedule the judicial review as quickly as practicable, and the review shall be on the record of the administrative hearing without taking of additional testimony or evidence. . . .

(c) The sole issues before the court shall be whether the director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

(d) The court shall not remand the matter back to the director for further proceedings consistent with its order.

### RELEVANT PRECEDENT

In *State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268 (1999), the Hawai'i Supreme Court affirmed the district court's order granting the defendant's motion to suppress the blood test results in the defendant's criminal DUI prosecution. The defendant had consented to a blood test after he was misinformed by the arresting officer

[t]hat if you refuse to take any tests the consequences are as follows: (1) if your driving record shows no prior alcohol enforcement contacts during the five years preceeding [sic] the date of arrest, your driving privileges will be revoked for one year *instead of the three month revocation that would apply if you chose to take the test and failed it*[.]

*Id.* at 47, 987 P.2d at 270 (emphasis in the original). The misinformation was that "your driving privileges will be revoked for one year instead of the three month revocation that would apply if you chose to take the test and failed it[.]" In truth, the Hawai'i Supreme Court said, an arrestee who is a first-time offender who chooses to take the test and fails it faces the possibility of license revocation for a period anywhere from three months to one year. The Hawai'i Supreme Court decided that because the arresting officer relevantly and materially misinformed the defendant of the administrative penalties applicable upon choosing to take the blood test and failing it, the defendant did not knowingly and intelligently consent to a blood test. According to the Hawai'i Supreme Court,

[t]he statutory scheme [of the implied consent statute], however, also protects the rights of the driver in that he or she may withdraw his or her consent before a test is administered. To this end, Hawaii's implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test.

. . . .

. . . Not only was the information given to Wilson misleading, it was relevant to his decision whether to agree to or refuse the blood alcohol test. Thus, although Wilson elected to take the test, he did not make a knowing and intelligent decision whether to exercise his statutory right of consent or refusal.

*Id.* at 49–51, 987 P.2d at 272–74 (footnote and citations omitted; emphasis in the original).

### BACKGROUND

In Castro's case, a hearing was held on November 24, 1999, and on November 29,

1999, the Hearing Officer entered Findings of Fact, Conclusions of Law, Decision (Director's Decision). The Findings of Fact state, in relevant part, as follows:

1. On September 16, 1999, at about 12:50 a.m. ...

....

5. [Castro] was arrested for driving under the influence.

6. The Arresting Officer informed [Castro] of the choice of taking a blood or breath test or both tests, and of sanctions for refusing to take either of these tests. As Officer Conjugacion attempted to read Form HPD–396B to [Castro], [Castro] pushed the form away and stated that he refused to take any test. Officer Conjugacion read the whole form, and [Castro] refused to take a blood or breath test.

....

8. [Castro's] driving record for the five years preceding the date of arrest indicates two prior alcohol enforcement contacts as defined by H.R.S. § 286.251 [sic].

The introductory part of the Director's Decision states, in relevant part, as follows:

I. *PROCEDURE*

....

... [Arresting] Officer [Melvin] Conjugacion was present and examined. [Castro] also testified.

II. *MOTIONS, OBJECTIONS AND ARGUMENTS*

....

... [I]n *Wilson,* the Court held that the information contained in the form was inaccurate and misleading because the form failed to inform the Arrestee that the ADLRO could increase the period of revocation from a minimum of three months to a maximum of one year (in that case). This Hearing Officer, however, finds that [Castro] had refused to take a breath or a blood test and that the minimum/maximum periods are inconsequential in a refusal situation....

[Castro] testified that he understood that he had three prior alcohol enforcement contacts and not two as indicated in the TRAVIS record. He thought that his prior arrest on November 8, 1997 (which was dismissed by the ADLRO and the District Court) constituted a third prior alcohol enforcement contact. He understood that the applicable provision in HPD–396B Form was paragraph B.4 and that he could cho[o]se to take or not take a test and his license would be revoked for life. He testified that he decided not to take a test because it would not have made any difference. This Hearing Officer finds that [Castro] refused to take a test. The District Court has held that an Arrestee's misunderstanding (a subjective deficiency, rather than an objective deficiency) does not warrant a reversal.

(Footnote omitted.)

The Director's Decision states as follows: "THEREFORE, it is the decision of the Director, by and through the undersigned Hearing Officer, that all the driving privileges of [Castro] are revoked for the amended period beginning October 17, 1999 until November 24, 2003."

The HPD–396B form stated, in relevant part, as follows:

That you may take either a blood test or a breath test or both;

... That if you refuse to take any tests the consequences are as follows:

....

... If your driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest, your driving privileges will be revoked for four years instead of the two year revocation that would apply if you chose to take a test and failed it,

... If your driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest, your driving privileges will be revoked for life regardless of whether you take a test or not[.]

The HPD–396B form statements regarding "two prior alcohol enforcement contacts" misinformed Castro that if he took a blood and/or breath test and failed it, he faced a revocation of his driving privileges for a period of two years. In truth, the revocation period he faced was not less than two years and not more than four years.

The HPD–396B form did not state the definition of the phrase "prior alcohol enforcement contacts."

On February 1, 2000, after a hearing on January 18, 2000, the district court entered its Decision and Order Reversing Administrative Revocation stating, in relevant part, as follows:

> In reviewing the record and, in particular, HPD form 396B . . . which was read to [Castro], this Court concludes that [Castro] was not properly informed of the sanctions . . . as required under Section 286–255, HRS.
>
> . . . However, in a case such as this case, where a police officer has not clearly and accurately informed [Castro] of his implied right to consent or refuse, together with the consequences of each, and [Castro] does not take a test for concentration of alcohol in the blood, [Castro] has been substantially prejudiced by this misinformation. Taking the test for concentration of alcohol in the blood could have provided [Castro] with exculpatory evidence. . . . Had [Castro] taken a test for concentration of alcohol in the blood and [Castro's] alcohol concentration was less than .08, pursuant to Section 286–256, HRS, the administrative revocation proceedings would have been terminated with prejudice.
>
> For this reason the Director's decision is hereby *REVERSED*.

(Emphasis in original.)

## DISCUSSION

### 1.

In its opening brief, the State responds to the *Wilson* misinformation/insufficient information argument Castro asserted in the proceedings below and contends that

> had [Castro] been read an "accurate" form—informing him of the possibility of *up to a four-year* revocation for taking and failing a test—he would have been even more likely to refuse the test! Therefore, the fact that [Castro] was read the old form could not possibly have prejudiced [Castro].

(Emphasis in original.) The State argues that "[w]hen an alleged defect in the HPD–396B sanctions form could not possibly have contributed to the driver's refusal to submit to a breath or blood test, there is no basis for overturning the license revocation, under *Wilson* or any other case."

In *Wilson*, the dissenting opinion noted that "[the defendant] has *never* asserted that he would have refused the test had he received a full explanation of the penalties under *Gray* [*v. Administrative Director of the Court*, 84 Hawai'i 138, 931 P.2d 580 (1997)]." *Wilson*, 92 Hawai'i at 60, 987 P.2d at 283. The majority opinion was silent on the question of the defendant's reliance on and prejudice from the relevant and material insufficient information/misinformation and concluded that the relevant misinformation and/or insufficient information resulted in the absence of a knowing and intelligent consent.

In light of *Wilson*, we conclude that, in this context, the question of the arrestee's reliance is objective, not subjective. Based on the relevant statutes and *Wilson*, we conclude that the arrestee's reliance on misinformation and/or insufficient information from the arresting officer is proved when the following conditions are satisfied and not proved when one or more of the following conditions is not satisfied:

1. Misinformation was given and/or a statute required the information to be given and the information was not given.

2. The misinformation and/or insufficient information was relevant and material to the arrestee's decision.

3. The State has not proved that the arrestee has admitted that he or she did not rely on the misinformation and/or insufficient information.

4. If given, the correct and/or sufficient information reasonably may have influenced a reasonable person to decide opposite of how the arrestee decided.

Conditions "2" and "4" are questions of law. It is the arrestee's burden to prove condition "1." It is the State's burden to disprove condition "3."

In Castro's case, condition "4" was not satisfied. The HPD–396B form statements regarding a history of "two prior alcohol enforcement contacts" erroneously informed Castro that if he took a blood and/or breath test and failed it, he faced a revocation of his driving privileges for a period of

two years. It failed to inform him that the revocation period he faced was not less than two years and not more than four years. In other words, the correct information was about a harsher penalty. We conclude that, if given, the correct information about a harsher penalty reasonably would not have influenced a reasonable person to decide opposite of how Castro decided. Therefore, the *Wilson* defense has not been established.

2.

■ In his answering brief, Castro refers to his defense that he refused the test because he thought that he had three "prior alcohol enforcement contacts" rather than two. He allegedly did not know that because he had been found not guilty, his arrest in 1997 for DUI was not a "prior alcohol enforcement contact." The district court agreed with this defense when it stated that "[i]ndeed, if [Castro] had been given adequate warnings, he may very well have decided to take a test. [Castro] could conceivably have passed such test and not have been subjected to a license revocation."

■ As noted above, the Hawai'i Supreme Court stated in *Wilson* that "Hawaii's' implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test." *Id.* at 49, 987 P.2d at 272 (citations omitted; emphasis in original). HRS § 286–255(a) requires that "[t]he arresting officer also shall inform the person of the sanctions under this part, including the sanction for refusing to take a breath or a blood test."

The question is whether, when the police informed Castro of the consequences of refusing to take any tests "[i]f your driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest" and "[i]f your driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest[,]" it also was required to inform Castro of the HRS § 286–251 definition of the phrase "alcohol enforcement contact." Our answer is yes. Absent the essence of the HRS § 286–251 definition, the phrase "alcohol enforcement contact" is no less than misleading. In no way does the word "contact" communicate the inclusion of

only those contacts that resulted in a "suspension," "revocation," and/or "conviction." We conclude that all of the above-noted four conditions necessary to establish that the information was misinformation and/or insufficient information have been satisfied. Therefore, the Wilson defense has been established.

The State argues that "[n]othing in the warning form suggested that the term ["alcohol enforcement contact"] included arrests where the driver is later cleared of the charges. In short, the warning form said nothing misleading, and was completely accurate." We disagree. An arrest where the driver is later cleared of the charges is a "contact." That is the basis for our conclusion that the word "contact" is no less than misleading.

CONCLUSION

Accordingly, we affirm the district court's February 1, 2000 Judgment on Appeal that reversed the administrative hearing officer's November 29, 1999 Notice of Administrative Hearing Decision that revoked the driver's license of Petitioner–Appellee Joseph P. Castro for four years from October 17, 1999, through November 24, 2003.