152 P.3d 535

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Kirk N. OKADA, Defendant–Appellee.**

No. 27774.

Intermediate Court of Appeals of Hawai'i.

Feb. 14, 2007.

Brian R. Vincent, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellant.

Samuel P. King, Jr., Honolulu, on the briefs, for defendant-appellee.

BURNS, C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

In this implied consent case,[1] the State appeals the January 11, 2006 findings of fact,

conclusions of law and order of the District Court of the First Circuit (district court)[2] that granted Kirk Norihiko Okada's (Defendant) February 25, 2005 motion *in limine* to exclude evidence of his breath alcohol test result, which the district court denominated a motion to suppress evidence. We vacate and remand.

## I.

At the December 21, 2005 hearing on Defendant's motion, the parties entered into various stipulations of fact, and apparently also some stipulations to the admission of certain exhibits. No other evidence, only argument, was adduced at the hearing. The district court's January 11, 2006 findings of fact (FF), conclusions of law (CL or COL) and order granting the motion read, in relevant part, as follows:

> Defendant filed a motion entitled Motion in Limine to Exclude Evidence. Notwithstanding the title, the motion is a motion to suppress evidence and is so treated by this court.... Having considered the stipulation of facts, submissions and arguments of counsel and the records and files herein, the Court hereby enters the following findings of fact, conclusions of law and order granting the motion to suppress.

### FINDINGS OF FACT

1. On August 1, 2004, Defendant was arrested for operating a vehicle while under the influence of an Intoxicant (OVUII

---

1. At the time of Defendant's arrest, Hawaii Revised Statutes (HRS) §§ 291E-11(a) and -11(b) (Supp.2005) provided:

 (a) Any person who operates a vehicle upon a public way, street, road, or highway or on or in the waters of the State shall be deemed to have given consent, subject to this part, to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration or drug content of the person's breath, blood, or urine, as applicable.

 (b) The test or tests shall be administered at the request of a law enforcement officer having probable cause to believe the person operating a vehicle upon a public way, street, road, or highway or on or in the waters of the State is under the influence of an intoxicant or is un-

der the age of twenty-one and has consumed a measurable amount of alcohol, only after:

(1) A lawful arrest; and

(2) The person has been informed by a law enforcement officer of the sanctions under section 291E-41 or 291E-65, as applicable to the offense.

HRS § 291E-1 (Supp.2006) defines "measurable amount of alcohol" as a test result equal to or greater than .02 but less than .08 grams of alcohol per one hundred milliliters or cubic centimeters of blood or equal to or greater than .02 but less than .08 grams of alcohol per two hundred ten liters of breath."

The 2006 legislature extensively amended the implied consent scheme. *See* HRS ch. 291E (Supp.2006), *passim*.

2. The Honorable William A. Cardwell presided.

or DUI) in violation of Section 291E–61, Hawaii Revised Statutes (HRS).[3]

2. After his arrest, a police officer read to Defendant HPD Form 396B which is attached as Exhibit A to the State's Memorandum in Opposition to Motion to Suppress and admitted into evidence for the hearing on the motion by stipulation. This form is sometimes referred to as the DUI Implied Consent Form and is used to in-

form a DUI arrestee of the sanctions under Section 291E–41, HRS.[4]

3. At approximately the same time, the officer read to Defendant HPD Form 396H which is attached as Exhibit B to the State's Memorandum in Opposition to Motion to Suppress and admitted into evidence for the hearing on the motion by stipulation. This form is sometimes referred to as the Zero Tolerance Implied Consent form and is used to inform a

---

**3.** HRS § 291E–61(a) (Supp.2006) provides:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

(2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(3) With .08 or more grams of alcohol per two hundred ten liters of breath; or

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

At the time of Defendant's arrest, first-time offenders were sentenced to substance abuse education and counseling, license suspension, a surcharge, and community service, imprisonment or a fine. Recidivists faced an escalating schedule of license suspensions or revocation, community service, fines, a surcharge and imprisonment. HRS § 291E–61(b) (Supp.2003).

**4.** At the time of Defendant's arrest, HRS § 291E–41 (Supp.2003) provided, in pertinent part:

(b) The periods of administrative revocation with respect to a license and privilege to operate a vehicle, and motor vehicle registration if applicable, that shall be imposed under this part are as follows:

(1) A minimum of three months up to a maximum of one year revocation of license and privilege to operate a vehicle, if the respondent's record shows no prior alcohol enforcement contact or drug enforcement contact during the five years preceding the date the notice of administrative revocation was issued;

(2) A minimum of one year up to a maximum of two years revocation of license and privilege to operate a vehicle and of the registration of any motor vehicle registered to the respondent, if the respondent's record shows one prior alcohol enforcement contact or drug enforcement contact during the five years preceding the date the notice of administrative revocation was issued;

(3) A minimum of two years up to a maximum of four years revocation of license and privi-

lege to operate a vehicle and of the registration of any motor vehicle registered to the respondent, if the respondent's record shows two prior alcohol enforcement contacts or drug enforcement contacts during the seven years preceding the date the notice of administrative revocation was issued;

(4) Lifetime revocation of license and privilege to operate a vehicle and of the registration of any motor vehicle registered to the respondent and a lifetime prohibition on any subsequent registration of motor vehicles by the respondent, if the respondent's record shows three or more prior alcohol enforcement contacts or drug enforcement contacts during the ten years preceding the date the notice of administrative revocation was issued; or

(5) For respondents under the age of eighteen years who were arrested for a violation of section 291E–61, revocation of license and privilege to operate a vehicle either for the period remaining until the respondent's eighteenth birthday or, if applicable, for the appropriate revocation period provided in paragraphs (1) to (4) or in subsection (d), whichever is longer and such respondents shall not qualify for a conditional permit; provided that when more than one administrative revocation, suspension, or conviction arises out of the same arrest, it shall be counted as only one prior alcohol enforcement contact or drug enforcement contact, whichever revocation, suspension, or conviction occurs later.

. . . .

(d) If a respondent has refused to be tested after being informed of the sanctions of this part, the revocation imposed under subsection (b)(1), (2), (3), and (4) shall be for a period of one year, two years, four years, and a lifetime, respectively.

(e) In addition to subsection (d), any motor vehicle registration of a respondent who is a repeat intoxicated driver and who refused to be tested after being informed of the sanctions of this part shall be revoked for the periods specified in subsection (d), and the respondent shall be prohibited from subsequently registering any motor vehicle for the applicable revocation period.

person allegedly under the age of 21 years of the sanctions under Section 291E–65, HRS.[5]

4. After both Exhibits A and B were read to Defendant, he was given a choice to take an alcohol concentration test or refuse. He chose to take a breath test.

5. After the breath test, Defendant was charged with violating Section 291E–64, HRS [6] as a person under the [sic] 21 years old who operated a vehicle with a measurable amount of alcohol, meaning a test result equal to or greater than .02, but less than .08 grams of alcohol per two hundred ten liters of breath as defined by Section 291E–1, HRS. This is sometimes referred to as the Zero Tolerance law.

### CONCLUSIONS OF LAW

1. A person under arrest for DUI must be properly informed so that he or she has the opportunity to make an informed and intelligent decision as to whether to take an alcohol concentration test or refuse

such a test. *State v. Wilson*, 92 Haw[ai'i] 45[, 987 P.2d 268] (1999).

2. Defendant was informed of the sanctions under both Sections 291E–41 and 291E–65 prior to being able to choose to take an alcohol concentration test or refuse such a test.

3. As a person under arrest for DUI, Defendant had the right to be accurately informed of his statutory right to consent or refuse an alcohol concentration test, as well as the consequences of such consent or refusal. *State v. Wilson*, 92 Haw[ai'i at] 49[, 987 P.2d at 272].

4. The relevant inquiry is whether the warnings given by the police officer afforded Defendant the opportunity to make a knowing and intelligent decision whether to take an evidentiary blood [sic] alcohol test. *Id.* at 50[, 987 P.2d at 273].

5. Exhibits A and B, independently, accurately informed Defendant as to his statutory right to consent or refuse a blood

---

5. At the time of Defendant's arrest, HRS §§ 291E–65(a), –65(b) and –65(c) (Supp.2005) provided:

(a) If a person under arrest for operating a vehicle after consuming a measurable amount of alcohol, pursuant to section 291E–64, refuses to submit to a breath or blood test, none shall be given, except as provided in section 291E–21 [(where a collision results in injury or death)], but the arresting law enforcement officer, as soon as practicable, shall submit an affidavit to a district judge of the circuit in which the arrest was made, stating:

(1) That at the time of the arrest, the arresting officer had probable cause to believe the arrested person was under the age of twenty-one and had been operating a vehicle upon a public way, street, road, or highway or on or in the waters of the State with a measurable amount of alcohol;

(2) That the arrested person had been informed of the sanctions of this section; and

(3) That the person had refused to submit to a breath or blood test.

(b) Upon receipt of the affidavit, the district judge shall hold a hearing within twenty days. The district judge shall hear and determine:

(1) Whether the arresting law enforcement officer had probable cause to believe that the person was under the age of twenty-one and had been operating a vehicle upon a public way, street, road, or highway or on or in the waters of the State with a measurable amount of alcohol;

(2) Whether the person was lawfully arrested;

(3) Whether the arresting officer had informed the person of the sanctions of this section; and

(4) Whether the person refused to submit to a test of the person's breath or blood.

(c) If the district judge finds the statements contained in the affidavit are true, the judge shall suspend the arrested person's license and privilege to operate a vehicle as follows:

(1) For a first suspension, or any suspension not preceded within a five-year period by a suspension under this section, for a period of twelve months; and

(2) For any subsequent suspension under this section, for a period not less than two years and not more than five years.

6. HRS § 291E–64(a) (Supp.2006) provides:

(a) It shall be unlawful for any person under the age of twenty-one years to operate any vehicle with a measurable amount of alcohol. A law enforcement officer may arrest a person under this section when the officer has probable cause to believe the arrested person is under the age of twenty-one and had been operating a vehicle upon a public way, street, road, or highway or on or in the waters of the State with a measurable amount of alcohol. At the time of Defendant's arrest, first-time offenders were sentenced to substance abuse treatment, license suspension, and community service or a fine. Recidivists faced an escalating schedule of license suspensions, community service and fines. HRS § 291E–64(b) (Supp.2005).

[sic] alcohol test and the consequences of such consent or refusal.

6. The statutory schemes for DUI and Zero Tolerance are separate and distinct schemes addressing related, but different problems. The DUI scheme addresses impaired driving and includes criminal prosecution for DUI (Section 291E–61) and administrative revocation of a person's driver's license due to impaired driving (Chapter 291E, part III) through the Administrative Driver's License Revocation Office (ADLRO). Hawaii's Zero Tolerance law addresses the separate, but related problem of people under the age of 21 years driving after consuming a measurable amount of alcohol. It addresses underage drinking and driving, not impaired driving. The DUI criminal and administrative laws apply to those under 21 just as they do to those over 21. *See e.g.,* Sections 291E–61(b)(4); 291E–61(c)(3); 291E–41(b)(5); 291E–65(e), HRS. Zero Tolerance laws apply only to those under 21 years old. Sections 291E–64–65, HRS.

7. When a person is arrested for DUI, whether under or over the age of 21, he or she must be informed as to the sanctions under Section 291E–41, HRS (administrative revocation), prior to making a decision to take a test or refuse a test. These sanctions are the administrative revocation periods that may apply to the individual in light of his or her circumstances as to prior alcohol enforcement contacts as well as the decision to take or refuse a test.

8. When a person is arrested for Zero Tolerance, he or she must be informed of the sanctions under Section 291E–65, HRS prior to deciding whether or not to take a test. These sanctions are similar, but different from the administrative revocation process. Generally, they involve an underage person who has refused a test and a civil hearing in this court rather than an administrative proceeding. The possible consequences of this hearing to the person are also similar, but different. They do not involve prior alcohol enforcement contacts, but rather prior suspensions under Section 291E–65, HRS. The result may involve a suspension, not a revocation of a license and the maximum suspension possible is five years as opposed to a revocation for life for DUI.

9. Section 291E–11(b)(2), HRS requires that a law enforcement officer inform a person of the sanctions under Section 291E–41 or 291E–65 "as applicable to the offense." The sanctions under 291E–41, HRS do not apply to Zero Tolerance and the sanctions under 291E–65, HRS do not apply to DUI.

10. Even though Exhibits A and B accurately informed Defendant of the sanctions under Sections 291E–41 (Exhibit A) and 291E–65 (Exhibit B), by reading both Exhibits A and B at the same time prior to having Defendant make a choice, the police did not afford Defendant the opportunity to make a knowing and intelligent decision whether to take an evidentiary blood [sic] alcohol test.

11. After being arrested for DUI, when making a decision whether or not to take a test, the information in Exhibit B is neither applicable nor accurate to that decision. Conversely, in making a decision whether or not to take a test when arrested for Zero Tolerance, the information contained in Exhibit A is neither applicable nor accurate to that decision.

12. Defendant was arrested for DUI. He should have been given the opportunity to take or refuse a test based upon the information contained in Exhibit A, alone.

13. If he consented to such a test, and it was determined thereafter that he would not be charged with DUI, whether under Section 291E–61(a)(1) or (a)(3), HRS (*see also,* Section 291E–3(b), HRS[ (a found alcohol concentration may establish a presumption of DUI) ] ), but rather charged under Section 291E–64, HRS, he was then entitled to make another and separate decision whether to take a test based upon the information contained in Exhibit B.

14. By compelling Defendant to make one decision for both rather than two separate decisions, the law enforcement officer rendered the information given to Defendant inaccurate and misleading.

## ORDER

Based upon the above findings of fact and conclusions of law, it is hereby ordered that Defendant's Motion to Suppress evidence of the blood [sic] alcohol concentration test is granted. The result of the breath test taken by Defendant cannot be used at the trial of this case.

(Footnotes supplied.) The State obtained an extension of time to file its notice of this appeal and did so on February 16, 2006.

## II.

■ Defendant correctly characterizes this appeal as a matter of law: "The facts in this case are not in dispute. In fact, the parties stipulated to the facts for purposes of what the trial court considered to be Defendant's motion to suppress." Answering Brief at 1. Defendant defends the district court's ruling of law,[7] thus:

> The trial court was clearly correct in its decision to suppress the breath test result in this case. It is firmly established law in Hawaii that "[a] person under arrest for [DUI] must be properly informed so that he or she has the opportunity to make an informed and intelligent decision as to whether to take an alcohol concentration test or refuse such a test. *State v. Wilson*, 92 Haw[ai'i] 45[, 987 P.2d 268] (1999)" (FF/CL, COL 1). The trial court goes on in its FF/CL to explain accurately the problem—the Implied Consent Form is intended to inform a defendant of rights with respect to the impaired driving statute, HRS 291E–61, while the Zero Tolerance Implied Consent Form is intended to

inform a defendant of rights with respec; [sic] underage drinking and driving whether or not the underage person is impaired, HRS 291E–64. COL 6. When both forms are read at the same time before giving an underage defendant the chance to take a breath test or not, the different sanctions applicable to the different laws which are designed to address different (although related) problems are confused and combined thereby giving an underage defendant "inaccurate and misleading" information (FF/CL, COL 14) and denying the defendant "the opportunity to make a knowing and intelligent decision whether to take an evidentiary blood alcohol test" (FF/CL, COL 10).

> In this case, Defendant was faced with the dilemma, after having both forms read to him before being asked whether he wanted to take a breath test or not, of wanting to take a breath test as to HRS 291E–61 because he was fairly certain he was under the .08 BAC [ (breath alcohol concentration) ] limit and not wanting to take a breath test as to HRS 291E–64 because he might be over the .02 BAC zero tolerance minimum. If Defendant tested over the .02 BAC minimum as to the Zero Tolerance law, he could be charged with a crime,[8] whereas if he refused to take a zero tolerance breath test, he could not be charged with a crime and would only be subject to a license suspension, not even a license revocation. Defendant had a right to have the different laws and sanctions applicable thereto read separately so he could made [sic] an informed and intelligent decision as to each law separately.[9]

7. "The circuit court's conclusions of law are reviewed under the right/wrong standard." *State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999) (citation and internal quotation marks omitted).

8. As is evident from its punishment, HRS § 291E–64(b), a violation of the *soi-disant* "zero tolerance law" is not a crime. HRS § 291E–64(i) (Supp.2006) ("Any person who violates this section shall be guilty of a violation.").

9. Defendant attached to his February 25, 2005 motion *in limine* a copy of a decision and order on judicial review of an administrative revocation, authored by the same presiding judge, which included similar exemplification:

> While couched in terms of jurisdiction, Petitioner's objection to his license revocation is grounded on the fact that he was provided both the Implied Consent Form–DUI and the Zero Tolerance Form at the same time, making it impossible for him to make an informed and intelligent decision to take a test or refuse. This is because this procedure puts an underage person in a difficult situation. Petitioner may well have been happy to take a breath or blood test under the DUI and administrative revocation process if he knew that the amount of alcohol he consumed was not enough to reach the threshold for a per se DUI violation. That is if Petitioner had one drink, his blood alcohol concentration might well be over .02, but well below .08. However, by reading the

This case involves a simple application of *State v. Wilson's* requirement that a defendant must be properly informed of the sanctions applicable to a possible charge against him and the consequences of taking or refusing to take a breath test with respect to that charge. The trial court properly weighed the competing considerations and properly ruled that the only manner in which all the sanctions can coherently be explained to [a DUI]/Zero Tolerance defendant is to first read the Implied Consent Form followed by a decision to take the breath test or not, and then read the Zero Tolerance Implied Consent Form followed by a decision to take the breath test or not. This is the only fair way to treat [a DUI]/Zero Tolerance defendant so that he is not confused and is able to make an informed and intelligent decision about whether to take a breath test as to each possible charge, [DUI] and Zero Tolerance. This is also the only way to execute the separate intents of the two different laws, as the trial court stated. FF/CL, COLs 6, 7, 8, and 9. For this reason, the trial court's FF/CL are unassailable and should be affirmed by this Court.

Answering Brief at 2–3 (some original brackets replaced; footnotes supplied).

 We disagree with Defendant. From the due process perspective, the implied consent regime rests upon the requirement of accurate warnings that enable the arrested person to knowingly and intelligently consent to or refuse an alcohol concentration test:

Among other things, our implied consent statute is intended to provide an efficient means of gathering evidence of intoxication. The statutory scheme, however, also protects the rights of the driver in that he or she may withdraw his or her consent before a test is administered. To this end, Hawai'i's implied consent scheme *mandates* accurate warnings to enable the driver to knowingly and intelligently consent to or refuse a chemical alcohol test.

*Wilson*, 92 Hawai'i at 49, 987 P.2d at 272 (footnote and citations omitted; emphasis in the original). In other words,

as the statutory language makes clear, a driver's "implied consent" to an evidentiary chemical alcohol test is qualified by his or her implied right to refuse such a test after being accurately informed of his or her statutory right to consent or refuse, as well as the consequences of such consent or refusal.

*Id.*

 In this case, there was no dispute that Defendant was lawfully arrested and then "accurately informed of his or her statutory right to consent or refuse, as well as the consequences of such consent or refusal[,]" *id.*, and the circuit court so found: "Exhibits A and B, independently, accurately informed Defendant as to his statutory right to consent or refuse a blood [sic] alcohol test and the consequences of such consent or refusal." COL 5. This is all the implied consent law required to validate the resulting breath alcohol test result. HRS § 291E–11(b) (Supp. 2005); *Wilson*, 92 Hawai'i at 49, 987 P.2d at 272.

Yet the district court went on to conclude:

Even though Exhibits A and B accurately informed Defendant of the sanctions under Sections 291E–41 (Exhibit A) and 291E–65 (Exhibit B), by reading both Exhibits A and B at the same time prior to

Zero Tolerance Form to him at the same time, Petitioner was then in a situation where a blood alcohol concentration of .02 would subject him to a charge under Section 291E–64, HRS rather than DUI. In other words, Petitioner could not "prove his innocence" of DUI by taking a test when the same test would "prove his guilt" of violating the Zero Tolerance law. If Petitioner was first read the Implied Consent Form–DUI and took a test with a result of .02 or more, but less than .08, law enforcement could then read the Zero Tolerance Form to him, providing him a clear op-

tion to take or refuse a test under the Zero Tolerance law.

Because the procedure of using both forms at the same time made it impossible for Petitioner to make an informed and intelligent decision to take or refuse a test for DUI based solely upon the sanctions contained in the form, the Hearing Officer should not have considered the refusal.

*Hay v. Administrative Director of the Courts*, JR No. 04–0030 (Haw. Dist. Ct. filed December 7, 2004), at 4–5.

having Defendant make a choice, the police did not afford Defendant the opportunity to make a knowing and intelligent decision whether to take an evidentiary blood [sic] alcohol test.

COL 10. COL 10 simply cannot follow from COL 5. Accurate warnings remain accurate, even when read in combination, no matter how detailed and comprehensive each warning may be. COL 10 makes some kind of sense only by reference to the bifurcated warning procedure advocated by Defendant in his answering brief. But that process contemplates more than the knowing and intelligent decision required by law. It posits moreover an all-knowing and manipulative one, which is definitely not mandated by law. Nothing in the applicable statutes or their respective legislative histories requires, or even suggests, the bifurcated warning procedure urged upon us by Defendant.

### III.

We conclude the circuit court was wrong to grant Defendant's motion to suppress. *Wilson,* 92 Hawai'i at 48, 987 P.2d at 271. Accordingly, the January 11, 2006 findings of fact, conclusions of law and order of the district court are vacated and the cause remanded for entry of an order denying Defendant's motion to suppress, and for trial.